**In re ALPEX COMPUTER CORP., Debtor.**

**ALPEX COMPUTER CORP., Plaintiff,**

**v.**

**Lucian C. WHITTAKER, II and Samuel R. Hales, Defendants.**

**Bankruptcy No. 85 J 0580.**

United States Bankruptcy Court, D. Colorado.

May 1, 1986.

Michael J. Guyerson, Rothgerber, Appel, Powers & Johnson, Denver, Colo., for trustee.

Arthur Lindquist-Kleissler, Solomon & Lindquist-Kleissler, Denver, Colo., for defendants.

## ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER comes before the Court on the Motion for Summary Judgment by Allen Watkins, Chapter 11 Trustee for the Debtor, Alpex Computer Corporation. On October 9, 1985, the Debtor's counsel, Paul G. Quinn, commenced this adversary proceeding by filing a complaint against Lucian C. Whittaker and Samuel R. Hales to set aside and avoid preferential transfers

and for turnover of property. The complaint was amended on October 11, 1985. Each defendant submitted a *pro se* answer to the complaint. Mr. Watkins was subsequently appointed as Trustee for the estate.

The amended complaint alleges that the Defendants received payments within one year of the date of the petition, while the Debtor was insolvent, which were in excess of any salary or recompense due them. The complaint states that the defendants occupied a fiduciary position with relation to the Debtor and were "insiders." The complaint also asserts that a transfer of the Debtor's interest in a musical group known as the Kashmir band, to Whittaker, constituted a preferential transfer.

The motion for summary judgment relies upon the Debtor's bankruptcy schedules and upon Mr. Whittaker's deposition, taken in February, 1985. At the hearing, recently-retained counsel for Mr. Whittaker tendered an affidavit containing sworn statements by Mr. Whittaker. However, this affidavit was not given to opposing counsel until the morning of the hearing. F.R.C.P. Rule 56(c), applied to bankruptcy proceedings through Bankruptcy Rule 7056, provides that "[t]he adverse party *prior* to the day of hearing may serve opposing affidavits." [emphasis added]. In addition, this Court's Local Rule 10(c) indicates that a brief is due twenty days after service of the motion. Therefore, the Court will not consider the Whittaker affidavit in reaching a determination of the motion for summary judgment. Under F.R.C.P. Rule 56(e), the Court will review the summary judgment motion, supporting documents, the Debtor's schedules, and the complaint and answers; since neither Defendant filed a proper factual response to the summary judgment motion, summary judgment shall be entered against them if it is appropriate.

The facts, as shown in the motion and in the Debtor's schedules, show that both defendants were members of the Alpex board of directors before filing of the bankruptcy petition. Mr. Whittaker is designated on the schedules as president of Alpex, and

Mr. Hales is listed as chairman. Further, both defendants owned stock in Alpex at the time of filing.

Schedule 19.b of Debtor's Statement of Financial Affairs indicates that within one year before the date of filing, Whittaker withdrew $109,285.82 in cash from the Debtor, and Hales received $42,000.00. Mr. Whittaker testified during his deposition that these payments, together with various other payments to Hales and to members of Whittaker's family, were wage payments for services rendered. Whittaker Deposition, page 87. He also stated that these wage payments were frequently made to Alpex employees over sixty days after the services were rendered. *Id.*, at 90. At the hearing, Mr. Whittaker's counsel asserted that sixty-to-ninety-day arrearages in the payment of wages are a common occurance in "venture capital enterprises" such as the Debtor.

During the month before the filing of the petition, the Debtor transferred to Mr. Whittaker its interest in a rock band known as "Kashmir", in exchange for which Whittaker forgave $60,000.00 in debt that Alpex allegedly owed to Whittaker. Whittaker testified that his daughter was a member of the band and that the value of the band was zero. He also testified that he had loaned money to the band on behalf of Alpex, and that Alpex had put little, if any, money into the band. Counsel for Mr. Whittaker contends the transfer of the band for cancellation of the debt may have augmented the estate, since the band had no value.

In his deposition, Mr. Whittaker states that certain patents owned by Alpex which were carried at zero on the company's balance sheet have since proven to have value. Whittaker Deposition, page 192. He stated that as of June, 1982 the liabilities of Alpex exceeded assets, to the best of his recollection, and that, as of June, 1982, the company showed inability to meet its obligations as they accrued. *Id.*, at 191–193. However, Mr. Whittaker did not believe the company to be insolvent at that time. *Id.*, at 192.

Summary judgment standards, as promulgated by F.R.C.P. Rule 56, apply to bankruptcy cases under Bankruptcy Rule 7056. Summary Judgment is appropriate only where no issue of material fact remains to be tried. *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1383 (10th Cir.1980). In addition, the moving party must show entitlement to judgment as a matter of law. *Norton v. Liddell*, 620 F.2d 1375, 1381 (10th Cir.1980). Summary judgment is considered a drastic remedy, *Jones v. Nelson*, 484 F.2d 1165, 1168 (10th Cir.1973), and the Court must view the evidence in the light most favorable to the party opposing the motion. *Lindley v. Amoco Production Company*, 639 F.2d 671, 672 (10th Cir. 1981).

With respect to the cash payments made to Whittaker and Hales, no material issue of fact exists. The parties agree that the payments occurred, and there is no dispute as to their amounts. The question to be determined is whether the transfers constituted an illegal preference under the Bankruptcy Code.

Section 547(b) of the Code sets forth the following five elements of a preference:

1. the transfer must be to or for the benefit of a creditor;

2. the transfer must be for or on account of an antecedent debt, that is, a debt incurred by the debtor before the transaction;

3. the transfer must have been made while the debtor was insolvent;

4. the transfer must have been made on or within ninety days before the date of filing the bankruptcy petition, or between ninety days and one year before the date of filing, if the creditor was an insider at the time of the transfer;

5. the transfer must enable the creditor to receive a a greater percentage of his claim than he would if the case were a Chapter 7 liquidation case and the creditor received payment to the extent provided by the Code.

■ The facts in the case at bar clearly indicate that Alpex made, or was caused to make, payments to its creditors Whittaker and Hales. The parties agree, and Whittaker's testimony demonstrates, that the transfer was made on account of an antecedent debt, incurred when services were rendered to Alpex prior to the payments.

Mr. Whittaker asserts that he did not believe Alpex was insolvent at the time of the transfer. However, although he stated that certain Alpex patents had increased in value, he admitted Alpex's reports stated that the company's liabilities exceeded its assets. Further, that bankruptcy schedules also indicate liabilities exceeding assets. The evidence presented to the Court clearly shows that liabilities were greater than assets throughout Mr. Whittaker's tenure with Alpex, and Mr. Whittaker has offered no specific evidence in rebuttal. He hinted that the patents might have considerable value, but put forth no evidence as to their actual value, other than the financial statements, which carried them at zero. Therefore, at the time of the payments, Alpex was insolvent under section 101(29) of the Bankruptcy Code, which provides:

(29) "insolvent" means—

(A) with reference to an entity other than a partnership, financial condition such that the sum of the entity's debts is greater than all of such entity's property, at a fair valuation.

The transfer of payments to Whittaker and Hales occurred within one year of the October 7, 1983 Chapter 11 filing. As directors and officers of the debtor, Whittaker and Hales fell at the time of the transfer within the definition of "insider" contained in section 101(28)(B) of the Code.

Finally, both Whittaker and Hales received a greater percentage of their claims as a result of the transfers than they would have received in a liquidation. The affidavit of the Trustee, which was unopposed, stated:

The defendants Whittaker and Hales in the present adversary proceeding have received much more than they would otherwise be entitled to had the transfers from Alpex to the Defendants not been made and the assets of Alpex were liquidated under a Chapter 7 bankruptcy proceeding.

The Trustee bases this assertion on his assessment that the real property and mining claims of the Debtor have little or no liquidation value, and that the patents may have a small value, but have lost significance and have limited marketability. As discussed above, Mr. Whittaker presented no evidence as to the actual value of the patents or any other assets, and no evidence contradicting the Trustee's sworn statements.

Mr. Whittaker attempts to raise the exceptions to a preference action promulgated by section 547(c) of the Code, by stating that the transfers were made in the ordinary course of business or were substantially contemporaneous with services rendered. The fact that Whittaker testified to a history of foregoing his salary, coupled with the fact that the payments were irregular and included two large lump sum transfers on June 21 and June 22, 1983, indicate that the payments were not made in the ordinary course of business.

Mr. Whittaker testified that he and other employees would wait sixty days to four months before getting paid for services and expenses. His counsel claims such practices are common in a venture capital enterprise.

■ Although the forty-five-day limit for transfers in the ordinary course of business was deleted from the 1984 amendments to the Bankruptcy Code under section 547(c)(2), the Court may use the requirement that the transfer be made "according to ordinary business terms," section 547(c)(2)(C), to assess whether a transfer occurred within a time limit compatible with the ordinary course of business. Here we have a bald assertion by Whittaker's counsel that a sixty-to-ninety-day wait is common for a venture capital enterprise, with no supporting documentary evidence or expert testimony. The Court has no

reason to believe such a delay corresponds with normal practice. In addition, there is not even a clear picture as to the specific dates on which services were rendered and the debt incurred. The Court therefore finds that a sixty-to-ninety-day wait is not reasonable under these facts, and must conclude that the transfers did not occur in the ordinary course of business, nor were they conducted according to ordinary business terms.

 The transfer also cannot be characterized as a substantially contemporaneous exchange under section 547(c)(1). That section provides that the parties must intend the transfer to be contemporaneous with new value. *See, In re Tinnell Traffic Services, Inc.,* 43 B.R. 277, 280 (Bankr.Tenn 1984). No such intent has been shown in this case, and the payments were made long after the debt was incurred by Whittaker and Hales rendering services. This set of facts discloses overdue payment for an antecedent debt, not new value. *See, In re Western World Funding, Inc.,* 52 B.R. 743, 760 (Bankr.Nev.1985).

The payments received by Whittaker and Hales meet the standards of section 547(b), and do not fall under any of the exceptions of section 547(c), therefore they constitute preferential transfers. The Trustee is thus entitled to judgment as a matter of law, and the Court will order summary judgment in his favor with respect to the cash payments made to Whittaker and Hales.

 With respect to the transfer of Alpex's interest in the band, however, the Court finds that a material issue of fact exists, precluding the award of summary judgment. The Trustee asserts the transfer of Alpex's interest in the band is valued at $60,000.00, the alleged consideration paid. The Debtor's schedules state that Alpex transferred its interest in the band to L.C. Whittaker, II. Statement of Financial Affairs, page 4. The sum of $59,971.66 is listed as a "chargeback for transfer of interest in 'KASHMIR'." Debtor's schedule 19.b. However, nowhere does any evidence appear as to the monetary value of the band or as to its value to the estate.

Mr. Whittaker testified alternately that the band was valueless at the time of transfer or that he did not know its value at the time of the transfer. Without this information, the Court cannot determine whether the transaction is subject to the Trustee's avoiding powers. It is, therefore,

ORDERED that summary judgment shall enter in favor of the Trustee with respect to the payments of $109,285.82 and $42,000.00 made to Whittaker and Hales. Respecting the transfer of the "Kashmir" band, the motion for summary judgment is denied. Each party shall bear its own costs as to this motion.

FURTHER ORDERED that trial in this action shall be held on June 12, 1986 at 9:00 a.m.