**In re STEEL IMPROVEMENT COMPANY, Debtor.**

**Robert S. HERTZBERG, Trustee, Plaintiff,**

**v.**

**AMERICAN ELECTRICAL CONTRACTORS, Defendant.**

**Robert S. HERTZBERG, Trustee, Plaintiff,**

**v.**

**CONSUMERS POWER COMPANY, Defendant.**

**Robert S. HERTZBERG, Trustee, Plaintiff,**

**v.**

**UNITED AIR SPECIALISTS, Defendant.**

**Bankruptcy Nos. 84–04322–R, 87–0089–R, 87–0102–R and 87–0112–R.**

United States Bankruptcy Court, E.D. Michigan, S.D.

Oct. 27, 1987.

Elizabeth Silverman, Birmingham, Mich., for plaintiff.

Susan Bieke Neilson, Detroit, Mich., John Pinney, Cincinnati, Ohio, for United Air Specialists.

Michael Wilson, Jackson, Mich., for Consumers Power Co.

Robert Zinn, Clawson, Mich., for American Elec. Contractors.

MEMORANDUM OPINION REGARDING MOTIONS FOR SUMMARY JUDGMENT

STEVEN W. RHODES, Bankruptcy Judge.

### I. *Introduction*

This opinion addresses an issue of law presented by various motions for summary

judgment in these three adversary proceedings. Pursuant to 11 U.S.C. § 547, the trustee seeks to recover several payments made by the debtor, Steel Improvement Company, to the defendants within 90 days of the debtor's bankruptcy petition, filed on December 19, 1984. The defendants do not deny that these payments were preferential transfers within the meaning of 11 U.S.C. § 547(b). However, each of the defendants contends that the "ordinary course of business" exception applies pursuant to 11 U.S.C. § 547(c)(2):

> (c) The trustee may not avoid under this section a transfer—
>
> (2) to the extent that such transfer was—
>
> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>
> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>
> (C) made according to ordinary business terms.

The trustee admits that these transfers were payments of debts incurred by the debtor in the ordinary course of the business affairs of the debtor and the defendants, as provided in subparagraph (A) of 11 U.S.C. § 547(c)(2).

The issue before the Court is whether the debtor's payments, which were customarily late, qualify as payments "made in the ordinary course of business ... of the debtor and the transferee" as required by subparagraph (B), and as payments "made according to ordinary business terms" as required by subparagraph (C). Each defendant contends that because the debtor regularly paid its debts late, these late payments were payments in the "ordinary course of business" between them. Each defendant further contends that because it regularly accepted late payments from the debtor, the late payments at issue were "made according to ordinary business terms." Thus, it is contended that all of the requirements of the exception in 11 U.S.C. § 547(c)(2) are met.

The trustee asserts that a late payment —that is, a payment made beyond the terms originally agreed upon by the parties—can never be a payment made in the "ordinary course of business," or "according to ordinary business terms." Thus, the trustee denies that the exception in 11 U.S.C. § 547(c)(2) applies.

## II. *The Facts*

### A. *Hertzberg v. Consumers Power Company*

In this adversary proceeding, Consumers Power Company filed a motion for summary judgment based upon the following undisputed facts:

Consumers Power provided gas service for the debtor. The practice of Consumers Power was to take a meter reading and to bill the debtor on a monthly basis. Each monthly bill showed a due date approximately 28 days after the meter reading. When Consumers Power received the debtor's payment, it credited the payment to the oldest outstanding bill. Using this bookkeeping method, it appears that in the 14 months prior to filing its petition for relief under Chapter 11, the debtor usually paid approximately one billing cycle late.

In the 90 day pre-petition preference period under § 547, the debtor made three payments to Consumers Power. The trustee seeks to recover a portion of two of these—$14,000 paid on November 19, 1984, and $12,000 paid on November 27, 1984.[1] Consumers Power credited the first payment to charges incurred in a meter reading on September 18, 1984, which were due on October 16, 1984. Thus, the first payment was made 61 days after the debt was incurred and 34 days after payment was due. The first payment paid the balance of the charges for the September 18, 1984 reading, but left a balance for the charges from a meter reading on October 17, 1984. Consumers Power commonly accepted such late payments from the debtor.

---

1. The parties agree that all but $3,660.58 of these payments are protected by the "new value" exception found in 11 U.S.C. § 547(c)(4). Thus, that is the amount in dispute.

Consumers Power credited the second payment on November 27, 1984 to the charges incurred in the reading of October 17, 1984, which were due November 14, 1984. Thus, the debtor made the second payment 41 days after the debt was incurred and 13 days after the payment was due. This payment paid only a portion of the charges incurred in the October meter reading, leaving an overdue balance. Consumers Power commonly accepted such partial payments from the debtor.[2]

### B. *Hertzberg v. American Electrical Contractors*

American Electrical Contractors filed a motion for summary judgment based upon the following undisputed facts:

American Electrical furnished electrical parts and performed electrical contracting work for the debtor on an open account credit arrangement for more than two years before the debtor filed Chapter 11. In this arrangement, American Electrical invoiced the debtor promptly upon furnishing parts or labor, and the invoices bore in large type the terms: "TERMS: PAYABLE UPON RECEIPT." In the 17 months before the debtor filed its petition in bankruptcy, it paid these invoices between 39 and 124 days after the invoice date, averaging 103½ days late. American Electrical did not employ any unusual measures to collect these late payments, did not explicitly grant extensions of time for payment, and did not make demands for payment.

The trustee seeks to recover a payment of $4,527.82 made on November 8, 1984. This payment was credited to several invoices dated July 17, 1984 to August 3, 1984. Thus, the payment was made from 97 to 114 days after the invoice dates.

### C. *Hertzberg v. United Air Specialists*

In this adversary proceeding, the trustee filed a motion for summary judgment, based upon the following undisputed facts:

United Air Specialists furnished equipment to the debtor on August 21, 1984. On August 22, 1984, United sent to the debtor an invoice, which inconsistently indicated "Terms: net 30 days FOB: 20% with order, 80% on delivery." Fifty-two days later, on October 15, 1984, United received a partial payment on this invoice in the amount of $42,500, which the trustee now seeks to recover.

On two previous occasions, Steel Improvement had purchased other equipment from United. The final payments for these two previous purchases had occurred thirteen and seventeen months after delivery.

### III. *The Ordinary Course of Business Exception*

Generally, in applying the "ordinary course of business" exception, and particularly subparagraphs (B) and (C) of 11 U.S.C. § 547(c)(2), in the context of late payments, the prior decisions have taken two distinct approaches. A majority of the decisions have confined their inquiry to whether the manner and timing of the late payments at issue were consistent with the manner and timing of previous payments made by the debtor in its course of dealings with the creditor. Thus, under this approach where the timing and manner of the late payments at issue are consistent with the manner and timing of prior late payments, the ordinary course of business exception is held to apply and recovery of the preferential transfer is denied. *See, e.g., In re Sunup/Sundown Inc. (Tolz v. Sunspa/Skinflicks)*, 66 B.R. 1021 (Bankr. S.D.Fla.1986); *In re Mindy's Inc. (Carmack v. Zell)*, 17 B.R. 177 (Bankr.S.D.Ohio 1982); *In re Ferguson (Canfield v. Greensville Feed Mill of Emporia)*, 41 B.R. 118 (Bankr.E.D.Va.1984); *In re White (Newton v. Ed's Supply Company, Inc.)*, 58 B.R. 266 (Bankr.E.D.Tenn.1986); *In re Decor Noel Corporation (Carson v. Metzger Business Forms)*, 65 B.R. 707 (Bankr. W.D.Tenn.1985); and *In re White (Newton v. Andrews Distributing Co.)*, 64 B.R. 843 (Bankr.E.D.Tenn.1986).

On the other hand, this approach holds that where the manner and timing of late payments at issue are not consistent with the parties' prior course of dealings, the

---

2. Both parties agree that a debt to a utility company is incurred when the meter is read.

*See, e.g., In re Thomas W. Garland, Inc.,* 19 B.R. 920 (Bankr.E.D.Miss.1982).

ordinary course of business exception does not apply and recovery of the preferential transfer is granted. *See, e.g., In re Commodity Exchange Services Co. (Commodity Exchange Services Co. v. Cotton Board),* 62 B.R. 868 (Bankr.N.D.Tex.1986); *In re Craig Oil Co. (Marathon v. Flatau),* 785 F.2d 1563 (11th Cir.1986); and *In re Ewald Bros., Inc. (Ewald Bros., Inc. v. Kraft Inc.),* 45 B.R. 52 (Bankr.D.Minn. 1984).

A minority of decisions recognize a significant distinction between the requirements of subparagraphs (B) and (C) of Section 547(c)(2) and hold that the late payments at issue must meet both requirements in order for the "ordinary course of business" exception to apply. Initially, these cases apply the same test as the majority test set forth above—whether the manner and timing of the late payments at issue were consistent with the manner and timing of the prior payments in the parties' course of dealing. This is done in the context of applying subparagraph (B) of Section 547(c)(2), which requires that the payment be made in the ordinary course of the parties' business affairs.

■ Then the minority approach imposes a different, additional test in applying subparagraph (C) of Section 547(c)(2), which requires that the payment be made according to ordinary business terms. The additional test is whether the manner and timing of the late payments at issue were consistent with ordinary course of business in the parties' industry. *See, e.g., In re Production Steel, Inc. (Production Steel, Inc. v. Sumitomo Corporation of America),* 54 B.R. 417 (Bankr.M.D.Tenn.1985); *Windsor Communications v. Freedom Greeting Card Co., Inc.,* 63 B.R. 770 (Bankr.E.D.Pa.1986); *In re Alpex Computer Corp. (Alpex Computer Corp. v. Whittaker),* 60 B.R. 315 (Bankr.D.Colo.1986); *In re Economy Milling Company, Inc. (Campbell v. Cannington),* 37 B.R. 914 (D.S.C.1983); and *In the Matter of Van Huffel Tube Corp (Van Huffel Tube Corp.*

*v. A & G Industries),* 74 B.R. 579 (Bankr. N.D.Ohio 1987).

The difficulty with the majority approach is that either it ignores subparagraph (C) of Section 547(c)(2) and thereby makes it a nullity, or it interprets subparagraph (C) to require the same showing as subparagraph (B) and thereby makes it superfluous. As this Court previously indicated, "It is a common axiom that a statute should be construed to give meaning to all of its provisions, if possible." *In re Hayball Trucking, Inc.,* 67 B.R. 681, 683 (Bankr.E. D.Mich.1986). *See also In re Arnett (Ray v. Security Mutual Finance Corp.),* 731 F.2d 358, 361 (6th Cir.1984):

> Finally, a construction of one part or provision of a statute which renders another part redundant or superfluous should be rejected; all parts of a statute should, if possible, be given effect. *Jarecki v. Searle & Co.,* 367 U.S. 303, 307–308, 81 S.Ct. 1579, 1582–1583, 6 L.Ed.2d 859 (1961).

As noted, the minority approach requires two distinct showings under subparagraphs (B) and (C) and thereby gives full effect to all of the provisions of Section 547(c)(2). Accordingly, the minority approach will be adopted and applied in the present adversary proceedings, and the majority approach is rejected.

Before applying the proper tests however, it is necessary to address *Advance Glove Manufacturing Company (Grogan v. Liberty National Life Insurance Company),* 761 F.2d 249 (6th Cir.1985). In that case, the debtor made two preferential payments for insurance premiums, which the trustee sought to recover, and which Liberty contended were protected by the "ordinary course of business" exception under Section 547(c)(2). At that time, this section contained an additional requirement that the payment be made within 45 days of the date that the debt was incurred.[3] The specific issue before the court was whether a debt for a monthly insurance premium was incurred at the beginning of the month or at the end of the month. The payments were made within 45 days of the end of

---

**3.** This 45 day time limit was previously set forth in subparagraph (B); the present subparagraph

(B) was then subparagraph (C) and the present subparagraph (C) was then subparagraph (D).

each month, but not within 45 days of the beginning of each month. Ultimately, the court agreed with the trustee that the debt was incurred at the beginning of each month and that therefore the payments were not made within 45 days, and therefore recovery was allowed. Because the 45 day limitation has since been eliminated,[4] this precise holding is presently of limited value.

However, in the course of its decision, the court employed some language which, it might be argued, supports the majority approach which is rejected herein. Specifically, the court stated:

> The primary purpose of the ordinary course of business exception "is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 373 (1977), reprinted in 5 U.S.Code Cong. & Admin.News pp. 5787, 6329 (1978). *The section thus looks to the ordinary course of business between the parties.* [Emphasis added.]

761 F.2d at 251.

No difficulty arises from the court's statement of the purpose of the exception, taken from the legislative history; in fact, the reference to "normal financial relations" supports the minority approach. The difficulty arises from the statement that Section 547(c)(2) looks to "the ordinary course of business between the parties." As noted, this statement arguably supports the majority approach.

Nevertheless, this Court concludes that this statement, by itself, does not require this Court to adopt the majority approach. First, it is not apparent how this isolated statement was necessary or relevant to the decision on the specific issue of when the insurance premium debt was incurred for purposes of commencing the 45 day time period. But second, even if it was relevant

to that issue, it was not made in the context of a decision interpreting the precise provisions presently at issue. Accordingly, this Court concludes that the statement is not binding in the present context.

For these reasons, the Court concludes that in order to prevail on a claim that a late payment meets the requirements of Section 547(c)(2)(B) and (C), a creditor must show[5] that the timing and manner of the late payment were consistent with timing and manner of other payments in the parties' prior course of business and in the parties' industry.

### IV. *Application of the Proper Standards*

 In each of these three adversary proceedings, the evidence overwhelmingly indicates that the manner and timing of the late payments at issue were consistent with the manner and timing of other payments made by the debtor to the defendants. The evidence indicates that the debtor regularly paid at least these three creditors late, and none of these creditors undertook any specific action to collect its debt from the debtor. Thus, the Court concludes that under Rule 56, Federal Rules of Civil Procedure, there is no genuine issue of material fact and that each of the defendants is entitled to a partial summary judgment to the effect that it has made the necessary showing under 11 U.S.C. § 547(c)(2)(B).

On the other hand, the Court must conclude that there is no evidence before it from which any determination can be made as to whether the manner and timing of these late payments were consistent with the manner and timing of other payments in the parties' industry. This factual issue simply has not been addressed by the parties. Accordingly, summary judgment on this issue is inappropriate at this time.

Appropriate orders are herewith entered in each of the three adversary proceedings.

---

4. The 45 day time limit was eliminated in the Bankruptcy Amendments and Federal Judgeships Act of 1984, P.L. 98–353, Title III, § 310, 462, July 10, 1984, 98 Stat. 355, 377.

5. Pursuant to 11 U.S.C. § 547(g), the creditor has the burden of proving the nonavoidability of a transfer under Section 547(c).