In the Matter of UNIMET
CORPORATION, Debtor.
(Three Cases)

UNIMET ASSETS DISPOSITION
TRUST, Plaintiff,

v.

CRAMERS, INC., Defendant.

UNIMET ASSETS DISPOSITION
TRUST, Plaintiff,

v.

KENMORE DEVELOPMENT &
MACHINE CO., INC.,
Defendant.

UNIMET ASSETS DISPOSITION
TRUST, Plaintiff,

v.

MICHAEL SAND CO., L.P.A.,
Defendant.

Bankruptcy No. 685–00240.
Adv. Nos. 687–0093, 687–0106
and 687–0166.

United States Bankruptcy Court,
N.D. Ohio.

March 18, 1988.

David Hunter, and Timothy Barry of Brouse & McDowell, Akron, Ohio, for trustee.

Richard Princic of Day, Ketterer, Raley, Wright & Rybolt, Canton, Ohio, for Michael Sands Co., L.P.A.

Wayne Kaschak of Kramer, Helling & Kramer, Canton, Ohio, for Cramers, Inc.

John Nehrer of Nehrer & Nehrer Co., L.P.A., Cuyahoga Falls, Ohio, for East End Welding Co.

David Friedman, of Hershey & Browne, Akron, Ohio, for Kenmore Development & Machine Co., Inc.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

Presented to the court are various motions for summary judgment in these three adversary proceedings. Pursuant to 11 U.S.C. § 547, the Unimet Assets Disposition Trust, through its Trustee, seeks to recover several payments made to the defendants by Unimet Corporation (Unimet) or its subsidiary Esmet, Inc. (Esmet). The defendants do not deny the applicability of Subsection 547(b) to these payments, but each of the defendants asserts that the ordinary course of business exception provided in 11 U.S.C. § 547(c)(2) thwarts the Trustee's avoidance effort:

(c) The trustee may not avoid under this section a transfer—

. . . . .

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

The Trustee admits that the transfers in question satisfy Section 547(c)(2)(A) and (B). The issue before the court is whether the debtors' payments were "made according to ordinary business terms." Section 547(c)(2)(C). Each defendant urges an affirmative answer in that they did nothing unusual or extraordinary to secure the payments. The Trustee counters that the timing of the payments was not consistent with ordinary business terms *in the parties' industry.*

## FACTS

Unimet and Esmet filed for relief under Chapter 11 of Title 11 of the United States Code on March 8, 1985. A joint plan of reorganization was confirmed by this court on November 24, 1986. Pursuant to this joint plan of reorganization, the Unimet Assets Disposition Trust was created with

Lee J. DiCola, a former officer of Unimet and Esmet, appointed Trustee.

## A.

## THE SAND TRANSACTIONS

The Trustee and Michael Sand Co., L.P.A. (Sand) have each filed motions for summary judgment based upon the following facts:

Sand, starting in late 1982, had begun providing legal services in the area of patent and trademark law for Unimet and Esmet. Sand regularly submitted monthly bills to Unimet for services rendered.

On October 1, 1984, Sand submitted an invoice in the amount of $956.00 to Unimet which was paid on January 4, 1985. On December 4, 1984, Sand submitted a second invoice in the amount of $744.25 to Unimet which was paid on January 28, 1985. A third invoice in the amount of $3,230.00 was submitted by Sand on December 28, 1984, and was paid by Unimet on February 13, 1985. Thus these payments were made 96, 55 and 46 days after Unimet received the respective invoices.

After offsets and credits, the Trustee seeks to recover $3,903.08 as a result of the above three payments.

Additionally, the Trustee seeks to recover two transfers totaling $5,262.77 made by Unimet to Sand for services rendered to Esmet. The Trustee alleges that these transfers are recoverable as fraudulent transfers pursuant to 11 U.S.C. § 548(a). Both Sand and the Trustee have also moved for summary judgment on this issue. In order to confine this Memorandum of Decision to a determination of the applicability of Section 547(c)(2) which is an issue in all three of these adversary proceedings, the issue of the alleged fraudulent transfers to Sand will be addressed in a separate memorandum of decision.

## B.

## THE KENMORE TRANSACTIONS

Both the Trustee and Kenmore Development & Machine Co., Inc. (Kenmore), seek summary judgment on the following relevant facts:

Kenmore performed work for Esmet in the late summer and fall of 1984. Kenmore sent an invoice in the amount of $7,668.48 to Esmet on September 27, 1984, for the completed work. Esmet received the invoice on September 28, 1984. Esmet issued a check to Kenmore in the amount of $7,668.48 on January 7, 1985, which Kenmore received on January 8, 1985. The check was honored by Esmet's bank on January 9, 1985. Thus the payment was made between 101 and 103 days after Esmet received the invoice.

## C.

## THE CRAMERS TRANSACTIONS

The Trustee has filed a motion for summary judgment based upon the following facts:

Cramers, Inc. (Cramers) performed work for Esmet pursuant to a September 12, 1984, purchase order. Cramers performed its obligations pursuant to said purchase order and invoiced Esmet on two separate occasions, on November 1, 1984, and on November 14, 1984. The work performed by Cramers was subsequently rejected by Esmet, whereupon Cramers picked up the goods and reworked them according to Esmet's revised specifications. There was no charge by Cramers for this additional work. The reworked goods were delivered to Esmet on December 5, 1984, and December 26, 1984. Cramers received a partial payment on December 20, 1984, for $2,150.00, an amount equal to the November 1, 1984 invoice. Cramers received a final payment for $4,888.00 on January 18, 1985, which was honored by Esmet's bank on January 21, 1985. This amount is equal to the November 14, 1984 invoices.

In addition to a dispute over the applicability of Section 547(c)(2), the parties are in disagreement as to when the debt to Cramers was incurred. In view of the court's decision as to Section 547(c)(2), the court need not make a determination at this time as to the date the debt was incurred.

## DISCUSSION

■ In applying the ordinary course of business exception, prior decisions may be divided into two separate categories. One approach, which seems to be the majority, is for the court to confine its inquiry to whether the manner and timing of the payments at issue were consistent with the manner and timing of previous payments by the debtor in its course of dealing with the creditor. Thus the court closely examines the conduct of the parties before it in coming to its conclusion. *See, In re Sunup/Sundown, Inc.,* 66 B.R. 1021 (Bankr.S.D.Fla.1986); *In re Craig Oil Company,* 785 F.2d 1563 (11th Cir.1986); *In re Ewald Brothers, Inc.,* 45 B.R. 52 (Bankr.D.Minn.1984).

The minority approach is to expand the inquiry to determine whether the manner and timing of the payments at issue were also consistent with the ordinary course of business in the parties' industry. *See, In re Production Steel, Inc.,* 54 B.R. 417 (Bankr.M.D.Tenn.1985); *In re Magic Circle Energy Corporation,* 64 B.R. 269 (Bankr.W.D.Okl.1986); *In re Van Huffel Tube Corporation,* 74 B.R. 579 (Bankr.N.D.Ohio 1987); *In re Steel Improvement Company,* 79 B.R. 681 (Bankr.E.D.Mich.1987).

As one of these courts points out:

The difficulty with the majority approach is that either it ignores subparagraph (C) of Section 547(c)(2) and thereby makes it a nullity, or it interprets subparagraph (C) to require the same showing as subparagraph (B) and thereby makes it superfluous ... "It is a common axiom that a statute should be construed to give meaning to all of its provisions, if possible."

*In re Steel Improvement Company,* 79 B.R. at 684. (Citations omitted).

This court agrees. Not to require two distinct showings, pursuant to subparagraphs (B) and (C) to establish the ordinary course exception would be to ignore the clear language of Section 547(c)(2) and its conjunctive subparts.

In applying Section 547(C)(2) so construed to the three adversary proceedings here, the court concludes, from the evidence before it, that summary judgment is inappropriate.

The Trustee, in all three adversary proceedings, has submitted a Dun & Bradstreet report and a supporting deposition of one Paul Bollinger, a Dun & Bradstreet business analyst. The report states that businesses in Esmet's industry pay their bills 30 to 45 days after receipt of an invoice. If the court were to accept this finding, it is clear that all three defendants are not entitled to claim the ordinary course exception.

■ The court, however, is not persuaded by this evidence for several reasons. First, as to Sand, the payments at issue were from Unimet, but the Dun & Bradstreet report relates only to industries similar to Esmet. The court is not inclined to give such a broad and liberal reading to the report as to make it applicable to a separate and distinct entity.

■ Second, and more important, is the fact that the report does not cover the same time frame in which the payments were made by Unimet and Esmet to the defendants. All the payments under examination were made between December 20, 1984 and February 13, 1985. But as is stated by Mr. Bollinger in his deposition, the information in the Dun & Bradstreet report is relevant for a time period from June, 1986 to July, 1987. Mr. Bollinger also states that the information in the report changes based on updated trade experiences.

Again, the court cannot elasticize the information in this report as to make it applicable to payments that occurred over one and one-half years prior to the time it is certified to be relevant. The court is well aware of the difficulties of presenting evidence as to the ordinary business terms in the parties' industry, but it is more cognizant of the fact that any decision made by it must be based on probative, relevant evidence.

■ Of the three defendants in the instant proceedings, only Kenmore has presented evidence on the issue of ordinary

business terms. Through affidavits and analyses of accounts receivable and accounts payable, Kenmore asserts that payments made 100 to 110 days after receiving an invoice are so made.

Upon review of this evidence, the court finds that it cannot make a definitive finding that these payments are consistent with the manner and timing of other payments in the parties' industry. The evidence presented by Kenmore does shed light on payments made to companies similar to Kenmore. But the evidence has not been shown to be relevant to companies in Unimet's or Esmet's industry. The court also finds the evidence not to be so convincing on this factual issue as to warrant granting summary judgment. Accordingly, the motions for summary judgment will be denied.

An order in accordance herewith shall issue.