**In re SERVICE BOLT & NUT CO., INC. Debtor.**

**Marvin A. SICHERMAN, Trustee,**

**v.**

**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**Bankruptcy No. B85–02403.
Adv. No. B88–0238.**

United States Bankruptcy Court, N.D. Ohio, E.D.

March 16, 1989.

Jeffrey D. Fincun, Cleveland, Ohio, for defendant.

Michael S. Arnovitz, Cleveland, Ohio, for trustee.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This adversary proceeding is a preference action filed by Marvin A. Sicherman (The Trustee), wherein he seeks to recover certain prepetition transfers made by Service Bolt & Nut Co., Inc. (The Debtor) to Massachusetts Mutual Life Insurance Company (the Insuror) within the ninety-day period preceding the petition filing. Following a trial on the matter, the Court has examined the evidence adduced and the arguments of counsel.

On September 25, 1985, the Debtor caused to be filed its voluntary petition for relief under Chapter 11. Subsequently, on May 27, 1986, an order was entered converting the case to liquidation proceedings under Chapter 7. Within a ninety-day period prepetition, the Debtor made three insurance premium payments to the Insuror for coverage on a certain Group Policy which provided insurance coverage for certain of the Debtor's employees. The premium payments owing on the policy were due no later than the first day of each month, subject to a thirty-one day grace period. The three prepetition payments which are the subject of this action totalled $25,348.93 and were made by The Debtor on July 9, 1985, August 6, 1985, and on September 11, 1985 (the payments). The Trustee seeks to recover those payments as avoidable preferences under § 547(b) of the Bankruptcy Code.

The dispositive issues are two-fold: (1) Whether the payments received by The Company within the ninety-day preferential period enabled it to receive more than it would receive from the Debtor's estate in a liquidation distribution under Chapter 7; and (2) Whether, if all of the avoidable preference elements are established by The Trustee, the payments would be excepted from avoidance as having been made within the ordinary course of business pursuant to § 547(c)(2).

■ The Trustee alleges that the payments received by the Insuror were preferential in that they allowed the Insuror to receive more than it would have received under a liquidation distribution under Chapter 7. The Company contends that even if the payments were preferential, they are excepted from avoidance under the "ordinary course of business" exception of § 547(c)(2). Section 547(b) of the Bankruptcy Code sets forth the requisite elements for an avoidable preference. In order to maintain such an action, it is necessary for The Trustee to establish by clear and convincing evidence that the prepetition transfer of the debtor's interest in property was (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made (A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of the transfer was an insider; and (5) that enables such creditor to receive more than such creditor would receive if—(A) the case were a case under Chapter 7 ...; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title. [11 U.S.C. 547(b)(1–5)].

For purposes of resolving this action, the parties have stipulated to the existence of all § 547(b) elements, except for 547(b)(5). As indicated above, § 547(b)(5) requires the trustee to establish that the prepetition payments received within the preferential period enabled the creditor to receive more than it would have received during a liquidation distribution. The burden of proof in a preference action is upon the party seeking to avoid the transfer. In the matter at bar, The Trustee has that burden, which must be met by clear and convincing evidence.

Upon examination, The Trustee provided testimony which revealed that the maximum anticipated receipts for the Debtor's estate were estimated at $276,730.41 with

present gross receipts of $214,937.25 as of February 13, 1989. Administrative claims were estimated in a total amount of $42,-432.46, accounting for attorney's fees, Trustee commission, court costs and service. Cash on hand was stated in an amount of $209,937.25, as of February 13, 1989. Those amounts, including anticipated expenses of administration, are to be viewed against a total of $650,685.25 in claims which were filed against the Debtor's estate, exclusive of allowed priority claims. Upon computation of these amounts, The Trustee testified that unsecured creditors would receive an estimated total of $235,537.95, or a minimum possible dividend of thirty-six percent upon a liquidation distribution. Factoring The Trustee's objections to $325,000.00 of the total claims, excluding duplicate filed claims, a maximum payout to unsecured creditors was projected at seventy-two percent during a liquidation distribution. No evidence was introduced by the Insuror to refute The Trustee's aforesaid computation. Although The Trustee was unfamiliar with the amount of The Debtor's total accounts receivable upon conversion to Chapter 7, he testified that the schedules reflected a total of $491,598.02 was owed the estate in accounts receivable as of the petition filing date. An evaluation of the aforesaid data is clearly evident of the fact that the subject payments allowed the Insuror to receive more than it would have received during a liquidation distribution under § 726 of the Code. Thusly, all five elements of § 547(b) have been established, rendering the payments to a status of avoidable preferential transfers. The Trustee sufficiently met his burden of proof.

■ Notwithstanding the above finding, the Court must next consider the statutory language of § 547(c) which allows certain types of transfers, although preferentially made, to be excepted from avoidance. Section 547(c)(2) provides that the Trustee may not avoid a transfer to the extent that it was (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (C) made according to ordinary business terms. 11 U.S.C. § 547(c)(2). In prosecuting an exception to an avoidable preference established under § 547(b), the burden of proof is upon the party seeking the exception. In this instance, the burden of proof is upon The Insuror and is to be met by clear and convincing evidence. Upon a review of the admitted evidence, the testimony, and the arguments of counsel, that burden has been met by the required standard.

The Debtor's group policy with the Insuror is a home office administered policy, and has been in force since 1972, without modification (LaPiene, Cross Exam.). The Insuror admitted that it received three payments during the ninety-day period prior to petition filing. The due date for all of The Debtor's policy premium payments is the first of each month. The premiums are considered paid when received by the Insuror. All of the policy's payment terms are set forth in the Insuror's policy with The Debtor. (See, cross-exam. of Victoria LaPiene; Ex. # 10). The Insuror considers a premium payment as being late if it is not received by the end of the thirty-one day grace period. (Ex. # 16, Office Memo re lapse/reinstatement of policies).

Each payment from The Debtor received by the Insuror within the 90–day prepetition period was a late payment, and a lapsed warning message was on each invoice pertaining to those payments. The testimony further revealed that at the end of the premium grace period, a case goes into lapse and a lapse warning notice is inserted on the invoice. Fifteen days later, a pre-cancellation notice is sent to the policyholder. Ten days after that notice is sent, the policy is cancelled. (*Id.*) The evidence reveals that the premium due on June 1, 1985 ($7,556.16) was not received by the Insuror until July 9, 1985. (*Id.;* Ex. # 12). The July 1, 1985 premium ($9,702.94) was not received by the Insuror until August 6, 1985, (*Id.;* Ex. # 13). The premium which was due on August 1, 1985 ($8,089.86) was not received by the Insuror until September 11, 1985. (*Id.;* Ex. # 14).

The premium which was due on September 1, 1985 was not received until October 1, 1985, almost one month postpetition. (*Id.;* Ex. # 15). Testimony further revealed that most policyholders are billed on a monthly basis between seven to ten days before the due date, which is on the first day of each month. (Peter Sheran, Direct Exam.). Although a policy premium payment is deemed to be late if not received by the end of the grace period, the policy is reinstated if paid within fifteen days following the end of the grace period. Unrefuted testimony further indicated that 75% of The Insuror's policyholders pay within the allowed grace period, while 25% pay outside of the grace period when the payment is deemed as being "late." *Id.* Although the subject payments were received late, The Debtor was fully insured and no pre-cancellation notice was ever sent to The Debtor (*Id.*). Those were not the only premium payments which were paid late by The Debtor. The evidence revealed that between July 1, 1983 and April 1, 1986, The Debtor made nineteen late premium payments which were accepted by the Insuror. (LaPiene, Direct Exam.), notwithstanding the first of the month due date requirement of the policy (*See,* Ex. # 10).

In order to prevail on a claim that a late payment meets the requirements of § 547(c)(2)(B) and (C), a creditor must show that the timing and manner of the late payments were consistent with the timing and manner of other payments in the parties' prior course of business and in the parties' industry. Here, that has been accomplished. *In re Steel Improvement Co.,* 79 B.R. 681, 16 B.C.D. 855 (Bankr.E.D. Mich.1987). From the above findings, it is clearly evident that the subject payments were late payments. Nevertheless, the manner of payments were made and the manner of the receipt of same by the Insuror, although substantially different from the policy requirements, established an ordinary course of dealing between The Debtor and the Insuror. In other words, the parties' commercial conduct between themselves shows that they consensually chose to ignore the policy's payment terms regarding the due date and instead engaged in a late payment mode. In other respects, unrefuted evidence was sufficient to establish that the payments were in accordance with ordinary business terms. Thusly, the ordinary course of business between the parties being established under § 547(c)(2) by the Insuror, the subject payments are not avoidable, and The Trustee's Complaint to avoid payments is denied.

IT IS SO ORDERED.