**In re HILLS OIL & TRANSFER, INC., an Illinois corporation, Debtor.**

**HILLS OIL & TRANSFER, INC., Plaintiff,**

v.

**The HAVANA NATIONAL BANK, Defendant.**

Bankruptcy No. 91–82747.

Adv. No. 92–8034.

United States Bankruptcy Court, C.D. Illinois.

July 16, 1992.

Barry M. Barash, Galesburg, Ill., for debtor/plaintiff.

Gregg N. Grimsley, Peoria, Ill., for defendant.

## OPINION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

In this case the parties agree there are no factual issues and have filed cross motions for summary judgment. The Debtor maintained a checking account with the Defendant. On August 1, 1991, the balance of the account was a positive $5,652.91. At that point the Debtor began to overdraw the account. As deposits were made the proceeds were used first to satisfy current checks drawn against the ac-

count and then the oldest overdrafts. The Bank permitted this condition to exist for a 61 day period. During this period, except for September 30, 1991, the opening balances were all negative, and except for August 1 and September 27 and 30, 1991, the closing balances were also all negative. During this period the negative balance created by the overdrafts gradually increased to a maximum of $167,339.91 on August 28, 1991, and then gradually decreased until it reached a positive balance on September 27, 1991. Appendix "A" to this Opinion, prepared by the Defendant, summarizes the activity in the account during this period.

The Debtor filed a Chapter 11 proceeding and then brought this preference action to recover $167,339.91 of overdrafts repaid as indicated above. The Defendant takes the position that it was merely extending a line of credit to the Debtor which was repaid in the ordinary course of business.

The "ordinary course of business" exception to a preferential payment is found in Section 547(c)(2) of the Bankruptcy Code which provides that a trustee may not avoid, as a preference, a transfer to the extent that such transfer was

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

11 U.S.C. Section 547(c)(2). The Debtor does not contest the existence of the first two criteria, but contends the transactions were not according to ordinary business terms. For the following reasons this Court agrees with the Debtor.

■ Under Section 547(g) of the Bankruptcy Code, 11 U.S.C. Section 547(g), the Defendant has the burden of proving that the transactions were made according to ordinary business terms. In determining if the Debtor met its burden of proof, the Court must first ascertain the test for defining what is meant by the words "ordi-

nary business terms." Is it a subjective test, which examines the course of dealings between the Debtor and the Defendant, or is it an objective test, which is based on industry practices or standards?

This Court adopts the objective test. Adopting the subjective test requires subsections 547(c)(2)(B) and (C) to be read identically and thereby ignore subsection (C) or render it superfluous. *See* 1 Robert E. Ginsberg, *Bankruptcy; Text, Statutes, Rules,* 2d ed., (P.H.1991), Part VIII, Sec. 8.03(c), p. 616. Congress would not include a superfluous element. In order to give meaning to all these elements the subjective test is required. This Court agrees with the court in *In re Loretto Winery, Inc.,* 107 B.R. 707 (9th Cir. BAP 1989) where the court stated:

It was the conclusion of the trial court that the third of these conditions, subparagraph (C), embodied an objective standard to be shown by the custom in the industry in which the transferee and debtor are engaged. We agree, for to graft upon the relevant terms anything but an objective yardstick would either ignore the operative nomenclature altogether, thereby making it a nullity, or interpret it in a manner which duplicates the requirement of subparagraph (B), thereby making it superfluous. (Citation omitted) Such a construction would run contrary to settled principles of construction by impermissibly rendering the statute inoperative or superfluous, and by failing to give effect to all the words employed by Congress.

While it is true that the decided cases are split on whether the test is subjective or objective in nature, and that at one point in time the majority position adopted the subjective test (*see Ginsberg, supra*) it no longer is true. Commenting upon this shift in favor of the objective test, the court in *In re Hancock–Nelson Mercantile Co., Inc.,* 122 B.R. 1006, 1010 (Bkrtcy.D.Minn. 1991), stated:

In one of the more frequently-cited decisions applying section 547(c)(2), the court termed [the subjective test] the "majority" approach. *See In re Steel*

*Improvement Co.,* 79 B.R. 681, 638–84 (Bankr.E.D.Mich.1987). *See Also In re Unimet Corp.,* 85 B.R. 450, 453 (Bankr. N.D.Ohio 1988). A strict head-count of decisions extant at the time supports this characterization. Since then, enough other courts have adopted the alternate test that the characterization is no longer correct. *See In re Loretto Winery, Ltd.,* 107 B.R. 707, 710 (Bankr. 9th Cir.1989) (characterizing the alternate rule as the "majority" rule). The court in *Steel Improvement Co.* itself adopted the then-"minority" rule.

In *Matter of Century Brass Products, Inc.,* 121 B.R. 136 (Bkrtcy.D.Conn.1990), the court also stated that "a majority of jurisdictions now agree that 'ordinary business terms' in subdivision (C) refers to 'an objective standard to be shown by the custom in the industry in which the transferee and debtor are engaged'", citing *Loretto Winery, supra.*[1]

■ The final step in determining whether the Defendant can rely on the ordinary course of business exception is to determine if the transactions were consistent with industry practices or standards. For the following reasons this Court finds they were not. The Defendant failed to establish an industry practice or standard. That alone is enough to find that it had not met its burden of proof. The Defendant merely argues that the repayments were not the result of coercion or set-off. Assuming that to be true, it is equally true, that the banking industry does not extend lines of credit in the manner argued for by the Defendant. In *In re Lite Coal Min. Co.,* 122 B.R. 692 (Bkrtcy.N.D.W.Va.1990), a case involving a claim for administrative priority for sums loaned to the debtor after the filing of a Chapter 11, the court stated that "it has been held that a bank's covering of overdrafts is not generally in the ordinary course of business," citing *In re SMB Holdings, Inc.,* 77 B.R. 29, 32 (Bankr. W.D.Pa.1987).

But even assuming that industry practice or standards, in general, was to extend a line of credit through the overdrafting of a checking account, the Defendant further failed to establish the specifics of how such lending would occur and how it would be repaid, and how these specific transactions would compare to what would occur in the banking industry. Certainly for checks and deposits which exceed $1,000,000.00 over a 61 day period there would be a written agreement. In this case, there is none. If as the Defendant argues these transactions are nothing more than revolving accounts receivable line of credit, there would be a dollar amount or percentage limitation, or both, on the amount the Debtor could borrow. A lender on a revolving line of credit would charge interest. Again, the record is silent as to these factors.[2] Such a lender would not be satisfied with a mere overdraft charge of $5.00 per item.

Some courts have indicated that it is well settled that overdraft protection is a transaction within the ordinary course of business exception. *See In re Fulghum Con-*

---

**1.** The subjective test, now clearly representing the minority view, still finds some support. In *In re Equipment Co. of America,* 135 B.R. 169 (Bkrtcy.S.D.Fla.1991), the court rejected the debtor's contention that the third condition contained in section 547(c)(2)(C) that the payment be "made according to ordinary business terms" is only satisfied if the payments conform to the ordinary business terms of the industry, and not simply those between the parties:

In *[In re] Southern Commodity* [78 B.R. 626 (Bankr.S.D.Fla.1987) ], the court required that payments be made according to terms ordinary in the industry. However, reading 11 U.S.C. section 547(c)(2)(C) as requiring compliance with terms ordinary in the industry would negate any benefit the exception would convey. That reading would require that the parties conduct themselves according to business norms, restricting their chosen course of dealing to an industry standard. The exception was created to allow debtors and creditors to continue in their normal course of business, and "discourage unusual action by either the debtor or his creditor during the debtor's slide into bankruptcy." *In re Craig Oil Co.,* 785 F.2d 1563, 1566 (11th Cir.1986). To hold otherwise would be to place the exception out of reach of all those debtors and creditors for whom it was written.

**2.** One of the columns on Appendix "A" prepared by the Defendant is entitled "Debit Memos". No explanation of what is meant is given. It would appear, and this Court would assume, it is for a $5.00 per overdraft service charge.

*struction Corp.*, 872 F.2d 739 (6th Cir. 1989). Inasmuch as those decisions appear to be based upon a subjective test, they do not help the Defendant here. Narrowing its holding, the court in *Fulghum* noted at footnote 5:

> Consideration of the practices of the parties might not conclude the section 547(c)(2) analysis; industry practice might be relevant to the section 547(c)(2)(C) element of "ordinary business terms." *E.G. In re Magic Circle,* 64 B.R. 269, 274 (Bankr.W.D.Okla.1986). However, in the instant case, this court is constrained to consider only the practices of the parties. The trustee did not dispute the appellants' contention that " 'ordinary' contemplates what is ordinary with respect to the parties." Appellants' Brief at 29. Nor is there any record evidence to indicate that industry practice differs from those of the parties, and, indeed, the record discloses that short-term financing to enable construction companies to meet cash flow needs is a common practice.

In *In re Yurika Foods Corp.*, 888 F.2d 42 (6th Cir.1989), a later decision of the 6th Circuit Court of Appeals, the court referred to the court's comments above in *Fulghum*, stating:

> The *Fulghum* court did acknowledge that courts "might" be required to examine the industry standards in addition to the parties' prior dealings. Although there was no need to examine industry practices in *Fulghum*, in the instant case, industry practices are directly implicated.

Although the court in *In re Fred Hawes Organization, Inc.,* 957 F.2d 239 at 243–44 (6th Cir.1992), did not criticize *Fulghum* directly, it stated that it was then establishing the requirement that the creditor, in defending a preferential payment, show that the payment was ordinary in relation to the standards prevailing in the relevant industry. The court rejected the creditor's contention that under this requirement the court only need scrutinize the relationship between the particular creditor and its other customers, determining that the court must analyze whether the particular transaction comports with the standard conduct of business within the industry. The bankruptcy court had rejected the only testimony concerning industry standards coming from the president of the debtor as lacking credibility and reliability and the court's decision was affirmed on appeal.

It would be mere speculation for this Court to explain why these transactions occurred. What is absolutely clear is that the Defendant failed to establish that what occurred is in accordance with industry practice or standards and falls within the scope of the ordinary course of business exception to Section 547.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## APPENDIX A

| Date 1991 | Opening Balance | Debit Memos | Checks | Deposits | Ending Balance | No. of Days | Loan | Payments |
|---|---|---|---|---|---|---|---|---|
| 8/01 | - 23,193.91 | 20.00 | 11,219.83 | 40,006.65 | 5,652.91 | | | |
| 8/02 | 5,652.91 | 120.00 | 25,922.11 | 5,301.99 | - 15,087.21 | 7 | 15,007.21 | |
| 8/05 | - 15,087.21 | 260.00 | 34,756.12 | 26,617.24 | - 23,496.09 | 4 | 8,398.88 | |
| 8/06 | - 23,496.09 | 190.00 | 88,201.46 | 26,199.20 | - 85,678.35 | 13 | 62,192.26 | |
| 8/07 | - 85,678.35 | 90.00 | 23,150.10 | 16,822.77 | - 92,095.68 | 12 | 6,417.33 | |
| 8/08 | - 92,095.68 | 30.00 | 25,436.79 | 63,526.66 | - 54,035.81 | | | |
| 8/09 | - 54,035.81 | 120.00 | 5,596.43 | 48,997.76 | - 10,754.48 | | | 81,341.20 |
| 8/12 | - 10,754.48 | 170.00 | 20,583.35 | 22,004.89 | - 9,502.94 | | | 1,251.54 |
| 8/13 | - 9,502.94 | 190.00 | 44,138.42 | 37,542.36 | - 16,289.00 | | | |
| 8/14 | - 16,289.00 | 100.00 | 114,118.72 | 37,323.40 | - 93,184.32 | 6 | 6,786.06 | |
| 8/15 | - 93,184.32 | 50.00 | 28,375.63 | 14,003.59 | - 107,606.36 | 15 | 76,895.32 | |
| 8/16 | -107,606.36 | 40.00 | 37,188.81 | 10,241.96 | -134,593.21 | 15 | 14,422.04 | |
| 8/19 | -134,593.21 | 150.00 | 19,406.05 | 60,693.04 | - 93,456.22 | 18 | 26,996.85 | 41,136.99 |
| 8/20 | - 93,456.22 | 110.00 | 26,055.04 | 30,211.77 | - 89,409.47 | | | 4,046.75 |
| 8/21 | - 89,409.47 | 20.00 | 46,400.48 | 28,816.91 | -107,021.04 | 16 | 17,611.57 | |
| 8/22 | -107,021.04 | 50.00 | 1,950.66 | 21,227.26 | - 87,794.44 | | | 19,226.60 |
| 8/23 | - 87,794.44 | 80.00 | 29,481.50 | 28,421.58 | - 88,934.36 | 14 | 1,139.92 | |
| 8/26 | - 88,934.36 | 150.00 | 36,862.98 | 59,561.24 | - 66,336.10 | | | 22,548.26 |
| 8/27 | - 66,336.10 | 90.00 | 102,057.06 | 13,020.73 | -156,312.43 | 27 | 89,026.33 | |
| 8/28 | -156,312.43 | 20.00 | 31,413.76 | 20,406.28 | -167,339.91 | 29 | 11,027.48 | |
| 8/29 | -167,339.91 | 40.00 | 36.47 | 15,765.58 | -151,650.80 | | | 15,689.11 |
| 8/30 | -151,650.80 | 60.00 | 21,363.49 | 27,390.37 | -145,683.92 | | | 5,966.88 |
| 9/03 | -145,683.92 | 130.00 | 18,731.59 | 60,335.07 | -104,210.44 | | | 41,473.43 |
| 9/04 | -104,210.44 | 80.00 | 19,225.86 | 19,896.92 | -103,619.38 | | | 501.06 |
| 9/05 | -103,619.38 | 60.00 | 12,678.90 | 6,155.23 | -110,203.05 | 23 | 6,583.67 | |
| 9/06 | -110,203.05 | 20.00 | 12,153.28 | 16,291.37 | -106,004.96 | | | 4,118.09 |
| 9/09 | -106,004.96 | 160.00 | 3,641.99 | 36,083.51 | - 73,803.44 | | | 32,291.52 |
| 9/10 | - 73,803.44 | 100.00 | 9,783.43 | 48,449.78 | - 75,237.09 | 16 | 1,433.65 | |
| 9/11 | - 75,237.09 | 80.00 | 9,883.22 | 10,866.86 | - 74,333.45 | 14 | 1,883.71 | 903.64 |
| 9/12 | - 74,333.45 | 60.00 | 19,964.20 | 18,140.49 | - 76,217.16 | | | |
| 9/13 | - 76,217.16 | 60.00 | 19,945.55 | 22,366.01 | - 73,857.70 | | | |
| 9/16 | - 73,857.70 | 140.00 | 30,513.04 | 49,996.23 | - 54,524.51 | | | 2,359.46 |
| 9/17 | - 54,524.51 | 80.00 | 49,908.32 | 54,256.69 | - 50,256.14 | | | 19,333.19 |
| 9/18 | - 50,256.14 | 70.00 | 9,120.96 | 20,706.61 | - 38,740.49 | | | 4,269.37 |
| 9/19 | - 38,740.49 | 40.00 | 51,133.81 | 53,967.89 | - 35,946.41 | | | 11,515.65 |
| 9/20 | - 35,946.41 | 40.00 | 13,178.37 | 23,934.38 | - 25,230.40 | | | 2,794.08 |
| 9/23 | - 25,230.40 | 160.00 | 5,550.66 | 15,664.34 | - 15,316.72 | | | 10,716.01 |
| 9/24 | - 15,316.72 | 75.00 | 45,569.15 | 47,170.62 | - 13,790.25 | | | 9,913.68 |
| 9/25 | - 13,790.25 | 90.00 | 6,874.57 | 7,935.56 | - 12,819.26 | | | 1,526.47 |
| 9/26 | - 12,819.26 | 30.00 | 11,854.35 | 23,420.05 | - 1,283.56 | | | 970.99 |
| 9/27 | - 1,283.56 | 15.00 | 10,941.13 | 15,584.92 | - 3,345.23 | | | 11,535.70 |
| 9/30 | - 3,345.23 | 30.00 | 7,872.54 | 15,637.35 | 11,000.04 | | | |
| | | 3,670.00 | 1,182,989.18 | 1,221,033.13 | | | 346,792.28 | 545,508.72 |

**212**

## ORDER

For the reasons set forth in the Opinion entered this day;

IT IS, THEREFORE, ORDERED:

1. That the Plaintiff's motion for judgment on the pleadings is GRANTED;

2. That the Defendant's motion for summary judgment is DENIED; and

3. That judgment is entered in favor of the Plaintiff and against the Defendant in the amount of $167,339.91, plus interest at the rate of 4.21% from March, 1992, through July 16, 1992, plus costs.