**In re Joseph Michael WHITE, d/b/a Kalthoff Heating & Cooling, Evaline White, Debtors.**

**John P. NEWTON, Jr., Trustee, Plaintiff,**

v.

**ED'S SUPPLY COMPANY, INC., Defendant.**

**Bankruptcy No. 3–85–00367. Adv. No. 3–85–1090.**

United States Bankruptcy Court, E.D. Tennessee.

Feb. 7, 1986.

See also 51 B.R. 514.

John P. Newton, Jr., Knoxville, Tenn., pro se.

D. Scott Hurley, Knoxville, Tenn., for defendant.

---

**1.** Until dissolution in October 1984, Kalthoff was a partnership. Debtor Joseph Michael White became the sole owner of Kalthoff's as-sets, assumed its liabilities, and continued doing business under the Kalthoff trade name.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

The plaintiff trustee contends a payment in the amount of $15,000.00 made to defendant by debtor is an avoidable preferential transfer. 11 U.S.C.A. § 547(b) (West 1979 & Supp.1985).

### I

Proof was submitted by way of stipulations, and by testimony of James Finnell, president and general manager of defendant Ed's Supply Company; debtor Joseph Michael White, the sole proprietor of Kalthoff Heating & Cooling (Kalthoff); and Barry Davis, office manager for Kalthoff. The facts are undisputed.

Defendant Ed's Supply Company, Inc. is a wholesale distributor of heating, refrigeration and air conditioning parts. Debtor Joseph Michael White, d/b/a Kalthoff Heating & Cooling, was engaged in the business of the installation of heating and air conditioning units as a mechanical contractor. Kalthoff first started purchasing heating, refrigeration and air conditioning parts from defendant in 1980, and continued to purchase such parts from defendant until the filing of the bankruptcy petition on March 18, 1985.[1]

Kalthoff periodically purchased heating, refrigeration and air conditioning parts from defendant. Defendant opened an account in favor of Kalthoff and extended credit in order to allow Kalthoff to purchase those parts necessary to satisfy its obligations as a mechanical contractor and installer on various construction projects.

The parties stipulated the authenticity and admissibility of defendant's account records regarding Kalthoff for the period from January 1, 1983, through March 18, 1985. These account records reflect that Kalthoff made irregular payments of varying amounts to defendant. The balance owed by Kalthoff to defendant fluctuated

greatly and tended to increase as purchases often exceeded the amount of payment on Kalthoff's account in any given month.

The following summary, reflecting each payment made to defendant on the Kalthoff account between January 1, 1983, and March 18, 1985, has been stipulated to by the parties:

| Amount of Indebtedness At Time of Payment | Date of Payment | Amount of Payment |
|---|---|---|
| $27,977.12 | 1-6-83 | $ 6,474.43 |
| 29,875.16 | 2-11-83 | 16,593.73 |
| 29,631.47 | 4-7-83 | 16,848.87 |
| 32,989.32 | 5-26-83 | 5,960.20 |
| 63,749.41 | 7-11-83 | 33,968.81 |
| 59,263.68 | 9-13-83 | 24,242.32 |
| 59,884.95 | 11-7-83 | 18,252.23 |
| 49,581.65 | 12-12-83 | 10,943.64 |
| 48,523.43 | 1-20-84 | 8,700.00 |
| 50,558.94 | 2-17-84 | 5,000.00 |
| 55,327.22 | 3-14-84 | 13,946.64 |
| 50,440.38 | 4-13-84 | 5,000.00 |
| 39,869.62 | 5-14-84 | 14,000.00 |
| 43,214.21 | 6-1-84 | 2,000.00 |
| 46,329.38 | 6-14-84 | 10,000.00 |
| 48,406.23 | 7-12-84 | 11,670.29 |
| 41,944.19 | 7-20-84 | 5,000.00 |
| 53,153.32 | 8-21-84 | 10,000.00 |
| 47,459.23 | 8-28-84 | 4,393.20 |
| 57,585.69 | 10-26-84 | 10,168.67 |
| 68,877.30 | 1-14-85 | 15,000.00 |

Defendant periodically sent invoices to the debtor indicating the outstanding balance owed on the Kalthoff account. Defendant's invoices provided that defendant's terms were 2%–10th net on the 25th of each month. However, it is clear that between January 1983, and March 1985, Kalthoff's indebtedness to defendant was never reduced to a zero balance. Joseph Michael White (the debtor) testified that Kalthoff and defendant established a course of dealing pursuant to which Kalthoff was allowed to maintain a significant balance owing to defendant at all times. White further testified that the timing and amount of payments to defendant were determined by collection of payments from Kalthoff's customers.

On January 14, 1985, the debtor made a payment to defendant on the Kalthoff account by check number 1570, in the amount of $15,000.00. Sixty-three (63) days later, on March 18, 1985, the debtor and his wife filed their joint bankruptcy petition.

The parties have further stipulated that subsequent to receiving the $15,000.00 payment on January 14, 1985, and prior to the filing of the bankruptcy petition on March 18, 1985, defendant extended additional credit in the amount of $5,864.76 to the debtor.

## II

Section 547 of the Bankruptcy Code enacts in part:

*Preferences*

.        .        .        .        .

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;

\*     \*     \*     \*     \*     \*

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C.A. § 547(b) (West 1979 & Supp. 1985).

The trustee alleges that the payment of $15,000.00 on January 14, 1985, to defendant constitutes an avoidable preference.

Defendant does not deny the existence of the five elements required by § 547(b) to establish a preference. However, defendant asserts two separate defenses under 11 U.S.C.A. § 547(c) (West 1979 & Supp.1985), which provides certain exceptions to the trustee's ability to avoid transfers.

Defendant's first defense to avoidance of the $15,000.00 transfer is § 547(c)(4) which provides:

(c) The trustee may not avoid under this section a transfer—

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor[.]

As previously stated, the parties have stipulated that defendant extended credit totaling $5,864.76 subsequent to the $15,000.00 transfer of January 14, 1985. Further, the parties stipulated that no payment was received for this subsequent extension of credit. Indeed, the trustee concedes that this extension of credit is within the scope of § 547(c)(4) and that the preferential payment of $15,000.00 is accordingly reduced by the sum of $5,864.76.

Defendant also asserts a defense pursuant to § 547(c)(2), which recites:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms[.]

■ Few decisions have addressed the meaning of the language regarding "ordinary course of business" and "ordinary business terms." One case makes it clear that the term "ordinary" contemplates, at least in part, that which is ordinary as between the respective parties. *Ewald Bros. v. Kraft, Inc. (In re Ewald Bros.)*, 45 B.R. 52, 57 (Bankr.D.Minn.1984).

The debtor testified that the payment made on January 14, 1985, to defendant was made for the purpose of reducing the indebtedness to defendant arising from purchases of various air conditioning, refrigeration and heating supplies. Thus, there can be no question that the transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and transferee, in that debtor was in the business of purchasing and installing such materials on various construction projects. However, it remains for the court to determine whether the payment was made in the ordinary course of business or financial affairs of the debtor and transferee, and whether such payment was made according to ordinary business terms.

■ According to the legislative history of § 547(c)(2), the clear purpose of the ordinary course of business exception "is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." H.R.Rep. No. 595, 95th Cong., 1st Sess. 373, (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6329; S.Rep. No. 989, 95th Cong., 2nd Sess. 88, (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5874. Thus, in determining whether a transferee has established the requirements of § 547(c)(2), the court should consider factors such as the prior course of dealing between the parties, the amount of the payment, the timing of the payment, and the circumstances surrounding the payment.

■ The payment received by the defendant on January 14, 1985, is comparable to numerous other payments made by Kalthoff to defendant between January 1983, and January 14, 1985. As demonstrated by the data submitted to the court, Kalthoff's balance owing to defendant fluctuated on a monthly basis depending on the amount of purchases and payments made during any particular month. Kalthoff made substantial payments of several thousand dollars

on a monthly or bimonthly basis, thereby reducing the outstanding balance. Although the invoices utilized by defendant set forth terms quoted as "2%–10th, Net 25th," it is clear that the parties established a course of dealing pursuant to which Kalthoff was allowed to maintain a significant balance owing to defendant at all times.

From January 6, 1983, through the filing of the bankruptcy petition on March 18, 1985, Kalthoff made a total of twenty-one (21) separate payments to the defendant. Five (5) of these payments exceeded $15,000.00 in amount and thirteen (13) of the twenty-one (21) payments equaled or exceeded the amount of $10,000.00. Thus, it cannot be said that the $15,000.00 payment by the debtor to defendant on January 14, 1985, was unusually large.

The last payment prior to the $15,000.00 payment on January 14, 1985, occurred on October 26, 1984, when the debtor paid the sum of $10,168.67 to defendant. The trustee has argued that the period of time between these two payments is sufficient to justify the classification of the January 14, 1985 payment as unusual or unordinary. However, the court cannot adopt this reasoning. The account records stipulated by the parties demonstrate that payments were made on an irregular basis. For example, Kalthoff made only eight (8) payments to the defendant during the year of 1983. Thus, the course of dealing between Kalthoff and defendant clearly demonstrates that payments were made on an irregular basis.

The debtor testified that the defendant never attempted to exert excessive pressure to force the debtor to make payments on the account. Compare *Flatau v. Marathon Oil Co. (Matter of Craig Oil Co.)*, 31 B.R. 402 (Bankr.M.D.Ga.1983) (after contacting debtor about invitation to join in involuntary bankruptcy petition creditor began receiving cashier's checks from debtor). Both the debtor and Kalthoff's office manager, Barry Davis, testified that they were unaware of any facts or circumstances which would justify classifying the January 14, 1985 payment of $15,000.00 to defendant as unusual or unordinary.

Considering the prior course of dealing between the parties, the amount, timing and circumstances surrounding the payment of January 14, 1985, this court is unable to find any fact or circumstance indicating that the $15,000.00 payment was in any way unordinary or unusual. It is clear to this court that the $15,000.00 payment was made in payment of a debt incurred by the debtor in the ordinary course of business; that the payment was made in the ordinary course of business or financial affairs of the debtor and defendant; and that the payment was made according to ordinary business terms as between the respective parties. Hence, defendant has established the elements of the § 547(c)(2) exception.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.