In re WEBSCO, INC., Debtor.

William H. HOWISON, Chapter 7 Trustee, Plaintiff,

v.

ADKIN PLUMBING & HEATING SUPPLY CO., INC., Defendant.

Bankruptcy No. 87–20299.
Adv. No. 87–2120.

United States Bankruptcy Court, D. Maine.

Oct. 14, 1988.

William Howison, Portland, Me., for plaintiff.

Tyler P. Harwell, Jack P. Crisp, Jr., and Associates, Berlin, N.H., for defendant.

## MEMORANDUM OF DECISION

FREDERICK A. JOHNSON, Chief Judge.

### INTRODUCTION

The Trustee in this adversary proceeding seeks to avoid and recover for the benefit of the debtor's estate certain preferential transfers made by the debtor to the defendant, Adkin Plumbing & Heating Supply Co., Inc. (Defendant).

The debtor filed a voluntary Chapter 7 petition on August 25, 1987. It is undisputed that the debtor made two payments to the defendant within 90 days of August 25, 1987.[1] The first payment was made on June 12, 1987 and was in the amount of $1,000. The second payment was made on July 14, 1987 and was in the amount of $2,000.

The defendant's answer essentially asserts a single defense. The defendant argues that the payments were made in the "ordinary course of business" and thus cannot be avoided as preferential transfers

---

**1.** The defendant does not dispute in its answer any of the five elements that the trustee must establish to recover pursuant to 11 U.S.C. § 547(b).

pursuant to Section 547(c)(2) of the Bankruptcy Code.

A pretrial conference was held on March 15, 1988, at which time the parties agreed to submit the matter on stipulated facts. A stipulation was subsequently filed and both parties thereafter filed legal memoranda.

## DISCUSSION

■ The First Circuit recently set forth the elements a creditor must satisfy in order to qualify for the Section 547(c)(2) exception. *WJM, Inc. v. Massachusetts Dept. of Public Welfare*, 840 F.2d 996 (1st Cir.1988). Those elements are that:

the subject transfer must be in payment of a debt that was *incurred* by the debtor in the ordinary course of its affairs with the creditor, the transfer itself must have been *made* during the ordinary course of these affairs, and the transfer must have been made according to ordinary business terms

*Id.* at 1011. Each of the elements set forth in the § 547(c)(2) exception must be satisfied. Furthermore, because the § 547(c) exceptions do not tend to controvert the trustee's prima facie case, they constitute defenses which must be set forth affirmatively. Consequently, the defendant transferee bears the burden of proving that it is entitled to the benefit of the exceptions. *See* 11 U.S.C. § 547(g); *Rovzar v. Biddeford & Saco Bus Garage (In re Saco Local Development Corp.)*, 25 B.R. 876, 878 (Bankr.D.Me.1982). *See Also Rovzar v. Southern Maine Metal (In re Saco Local Development Corp.)*, 30 B.R. 867, 868 (Bankr.D.Me.1983).

The Legislative History makes clear that the purpose of Section 547(c)(2) "is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy" H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 88 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5874, 6329. Additionally, the First Circuit has noted that courts and commentators agree that the purpose of this exception is to protect the "recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee." *WJM*, 840 F.2d at 1011 (*citing* 4 *Collier on Bankruptcy* ¶ 547.10, at 547–42 (L. King. 15th ed. 1987)).

Although the First Circuit in *WJM* does provide a framework for deciding section 547(c)(2) matters, the facts of that case did not require a more detailed analysis. Still, it is clear that the court "must focus on the conduct of the parties involved" and determine what is ordinary with respect to those parties. *In re First Software Corp.*, 81 B.R. 211, 213 (Bankr.D.Mass.1988).

■ The court in *First Software* suggested factors a court should consider to determine whether the creditor has satisfied its burden under section 547(c)(2). Those factors include: "1) the prior course of dealing between the parties; 2) the amount of the payments; 3) the timing of the payments; and 4) the circumstances surrounding the payments." *Id.* (*citing In re White*, 58 B.R. 266, 269 (Bankr.E.D. Tenn.1986)). The statute addresses the "protoypical short term credit transaction" whereby the creditor must demonstrate to the court consistency in prior business dealings between the debtor and creditor. *WJM*, 840 F.2d at 1011.

This court recently attempted to define the phrase "ordinary course of business" in the context of section 364(a). *In re C.E.N., Inc.*, 86 B.R. 303 (Bankr.D.Me.1988). This court focused on whether the transaction was within the day-to-day business of the debtor and was consistent with the prior dealings between the parties. *Id.* at 305. Furthermore, this court looked at whether the transaction was one that occurred in the day-to-day operations of a similar business. *Id.*[2]

---

**2.** This factor is analogous to what one court, in the context of section 547(c)(2), termed 'objective ordinariness', i.e., whether the subject transfer was made according to common industry

The thrust of the parties' stipulation is that for the nine months prior to the filing, the debtor was a regular customer of, and made frequent purchases from, the defendant, purchasing plumbing and heating supplies on an open account. According to the stipulation, the terms the defendant offered to the debtor were substantially the same terms offered to all of its regular customers. Those terms were:

2% 10 days from date of invoice—Net 30 days. Invoices not paid within terms will be subject to a 2% per month interest charge

All of the debtor's purchases totalled $8,375.83 and all payments (6) totalled $5,140.55, leaving an outstanding balance as of July 14, 1987 of $3,235.29.[3] The debtor continued to make purchases from the defendant until the date of its last payments. According to the stipulation, the debtor's purchases subsequent to June 12, 1987 totalled $1,384.55, a period of time in which the debtor made payments totalling $3,000.00.

There seems to be agreement between the parties that the debtor was making payments on past due accounts. Some courts would take the view that late payments could never be made in the ordinary course of business. *See e.g. In re Southern Industrial Banking Corp.*, 72 B.R. 512, 515 (Bankr.E.D.Tenn.1987); *In re Sweetapple Plastics, Inc.*, 77 B.R. 304, 311 (Bankr.M.D.Ga.1987) ("Although a late payment is not automatically outside of the ordinary course of business exception, late payments are more likely to be considered outside of the ordinary course of business."). Still another court would approach the Section 547(c)(2) exception in the context of late payments by simply applying the factors enumerated above, including comparing the practice in question to industry norms. *In re Steel Improvement Co.*, 79 B.R. 681, 683–84 (Bankr.E.D.Mich.1987)

The trustee argues that after making infrequent payments on specific invoice amounts, the debtor, after two months of payment inactivity, made three lump sum payments in response to the defendant's collection efforts. The defendant argues that there is no evidence that the parties departed from their usual course of dealings or their usual terms or practices. Although the defendant admits that the payments in question were made against a past due account, it disagrees with the trustee that this practice was therefore *not* in the ordinary course of business. (emphasis added).

This court agrees that late payments, in and of themselves, indicate a trade relationship that is most often out of the ordinary; that is, not the normal financial relations the legislative history speaks to. However, if the creditor-transferee can satisfy its burden that such a practice was consistent with the parties' prior course of dealings and, to a lesser extent, was consistent with common industry practice, then the ordinary course of business exception will apply and recovery of the preferential transfer will be denied.

In this case the defendant has not satisfied that burden. Although the payment history is somewhat regular,[4] the de-

---

practice. *In re Magic Circle Energy Corp.*, 64 B.R. 269, 272 (Bankr.W.D.Okla.1986). The *Magic Circle* court would describe the factors this court noted above as 'subjective ordinariness'. *Id.*

**3.** Purchases began on November 1, 1986, and continued until July 14, 1987. Payments were made on the following dates and in the following amounts:

| December 16, 1986 | $ 253.98 |
| January 13, 1987 | 316.16 |
| March 12, 1987 | 1070.41 |
| May 5, 1987 | 500.00 |
| June 12, 1987 | 1000.00 |
| July 14, 1987 | $2000.00 |
| | $5140.55 |

The debtor presumably discontinued making payments after the July 14, 1987 payment because it was in financial straits; a little more than a month later, the debtor filed its Chapter 7 petition.

**4.** The payment history was somewhat regular at least to the extent that one payment was usually made monthly. However, it is clear that payments were being made on past due accounts and that several invoices were not being paid.

**4**

fendant has still not established a pattern of consistency among the payments. A total of six (6) payments were made: the first three (3) were for very specific amounts and the latter three (3) appear to be lump sum payments. These last three payments were apparently made on past due accounts in an attempt by the debtor to clear its outstanding balance.[5] The defendant has provided the court with no reason to find that those payments were made in the ordinary course of business. When all the payments and their amounts are viewed in toto, it appears that the trade and payment relationship between the parties was erratic rather than ordinary.

Finally, the defendant attempts to argue that the debtor's overdue accounts and late payments were nothing out of the ordinary compared to similar trade relationships the defendant had with its other customers. The defendant has not supplied the court with any evidence to support this allegation and therefore the defendant has not satisfied its burden. The defendant's ordinary course defense therefore must fail and the trustee will prevail on his complaint.[6]

An appropriate order will be entered

---

5. The trustee claims that these payments were made in response to collection efforts on the part of the defendant. The defendant disputes this point. Since the trustee has not provided the court with any evidence on this point, this court did not consider the trustee's claim in deciding this adversary proceeding. A payment which resulted from a collection effort would surely not be made in the ordinary course of business. *See e.g. In re First Software Corp.,* 84 B.R. 278, 286 (Bankr.D.Mass.1988) (*quoting In re Craig Oil Co.,* 785 F.2d 1563, 1566 (11th Cir. 1986)).

6. The trustee originally sought the turnover of $3,000. In his memorandum of law, however, the trustee gave the defendant new value credit in the amount of $1,384.55. The trustee will prevail in the amount of $1,615.45, the net preference amount.