In re MID–SOUTH CABINET & MILLWORK, INC., Debtors.

James Allen BROWN, Trustee, Plaintiff,

v.

HEIGEL LUMBER & HARDWARE, Defendant.

Bankruptcy No. LR 86–1773M.
Adv. No. 88–511M.

United States Bankruptcy Court,
E.D. Arkansas, W.D.

Oct. 24, 1990.

George F. Hartje, Conway, Ark., for defendant.

Geoffrey B. Treece, Little Rock, Ark., for trustee.

Jim Hollis, Little Rock, Ark., Asst. U.S. Trustee.

James Allen Brown, Little Rock, Ark., trustee.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On October 21, 1986, an involuntary petition for relief under the provisions of chapter 7 of the United States Bankruptcy Code was filed against Mid–South Cabinet & Millwork, Inc. (Mid–South). On November 23, 1988, James Allen Brown, the trustee for the chapter 7 estate, filed this adversary proceeding against Heigel Lumber & Hardware (Heigel) to recover two alleged preferential transfers pursuant to 11 U.S.C. § 547(b). Heigel raised three affirmative defenses: (1) that the transfers were made in the ordinary course of business and according to ordinary business terms under 11 U.S.C. § 547(c)(2); (2) that the alleged transfers were contemporaneous exchanges for new value under 11 U.S.C. § 547(c)(1); and that the transfers were subject to setoff against subsequent

new value given under 11 U.S.C. § 547(c)(4).[1]

The following shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F), and the Court has jurisdiction to enter a final judgment in the case.

Mid–South, a cabinet-making business, purchased materials and supplies from Heigel on an open account basis. According to the printed terms on Heigel's invoice, payment for the invoice was due and payable on the tenth day of the month following the date of the invoice. Heigel's bookkeeper testified that accounts were considered due within forty days after the purchase, but in the normal course of its business Heigel carried accounts for a considerably longer time period. In July 1986, 55% of Heigel's outstanding invoices were over ninety days old.

On July 23, 1986,[2] Mid–South owed Heigel $12,355.59 for materials purchased from March 26, 1986, to July 23, 1986. On July 27, 1986, Heigel sold $80.01 worth of materials to Mid–South on credit. On July 31, 1986, Heigel received a payment from Mid–South for $8,963.43, and on August 13, 1986, Heigel received a payment from Mid–South for $3,472.17. From August 13, 1986, through October 21, 1986, Heigel sold $3,724.00 worth of materials and supplies to Mid–South on credit for which no payment has been received. Heigel's ledger sheet for Mid–South contained two hand-written notations. One notation stated, "ck. in mail today—7/24/86." The second notation stated, "Bruce Stephens called for statement in full 7-29-86. Cut off on Aug. 11, if July bill not paid."

There is no dispute that the trustee presented a prima facie case under 11 U.S.C. § 547(b) for recovery of the two preferential transfers totaling $12,435.60. The dispute concerns the affirmative defenses raised by Heigel under 11 U.S.C. § 547(c)(2) and (4).[3]

A creditor who raises the provisions of section 547(c) as a defense to a preference action has the burden of proof to establish the applicability of the section. 11 U.S.C. § 547(g). *See First Software Corp. v. Curtis Mfg. Co. (In re First Software Corp.*, 81 B.R. 211, 212 (Bankr.D. Mass.1988)); 4 *Collier on Bankruptcy* ¶ 547.21[5] (15th ed. 1990).

Heigel's first affirmative defense arises under section 547(c)(2), which provides:

(c) The trustee may not avoid under this section a transfer—

. . . .

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms[.]

The legislative history of section 547(c)(2) suggests that the purpose of the ordinary course of business exception is to "leave undisturbed normal financial relations" between the debtor and the creditor. Ordinary course of business transactions do not detract from the general purpose of the preference section which is to discourage unusual action by either the debtor or his creditors immediately prior to bankruptcy. H.R.Rep. No. 95–595, 95th Cong. 1st Sess.

---

**1.** Although it is unclear whether Heigel actually pleaded this affirmative defense in its answer, the evidence at trial raised the issue without objection. *See* Fed.R.Civ.P. 15(b); Bankruptcy Rule 7015; Fed.R.Civ.P. 54(c); Bankruptcy Rule 7054(a).

**2.** Except in circumstances not present here, only transfers occurring within 90 days of the bankruptcy filing are subject to avoidance as preferences. 11 U.S.C. § 547(b)(4). July 23, 1986, is the date on which the 90–day preference period began in this case.

**3.** Heigel also raised the affirmative defense of section 547(c)(1), which pertains to contemporaneous exchanges of new value; however, the provisions of this section clearly do not apply under the facts in this case.

373, *reprinted in* 1978 U.S.Code Cong. & Admin.News. 5787, 5963, 6329.

The term "ordinary course of business" is not defined in the Bankruptcy Code; therefore, its determination is a factual issue. *First Software Corp.*, 81 B.R. at 213. In determining whether a payment is made in the ordinary course of business, courts must consider all of the facts and circumstances surrounding the payments. The factors include the prior course of dealing between the parties, the timing and amount of the payment, and whether the payment resulted from pressure or any unusual activity by the creditor. *Xtra, Inc. v. Seawinds Ltd. (In re Seawinds Ltd.)*, 888 F.2d 640, 641 (9th Cir.1989); *Newton v. Ed's Supply Co. (In re White)*, 58 B.R. 266, 269 (Bankr.E.D.Tenn.1986). *See* 4 *Collier on Bankruptcy* ¶ 547.10 (15th ed. 1990). The transaction must be within the ordinary course of business for both the debtor and the creditor. *DuVoisin v. Federal Sav. & Loan Ins. Corp. (In re Southern Indus. Banking Corp.)*, 72 B.R. 512, 515 (Bankr.E.D.Tenn.1987). Courts must focus on the conduct of the parties involved and determine what is ordinary with respect to those parties. *Howison v. Adkin Plumbing & Heating Supply Co. (In re Websco, Inc.)*, 92 B.R. 1, 2 (Bankr.D.Me. 1988); *First Software Corp.*, 81 B.R. at 213.

The ordinary course of business exception is intended to apply to credit transactions which are meant to be paid in full within a single billing cycle. *Marathon Oil Co. v. Flatau (In re Craig Oil Co.)*, 785 F.2d 1563, 1567 (11th Cir.1986). Even if the debtor's business transactions were irregular, they may be considered "ordinary" for purposes of section 547(c)(2) if the transactions were consistent with the course of dealing between the particular parties. *Waldschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 872 F.2d 739, 743 (6th Cir.1989). There is, however, not complete agreement whether the standard for determining ordinary course of business should be objective or subjective. *See* Herbert, *The Trustee versus the Trade Creditor: A Critique of Section 547(c)(1), (2),*

and *(4) of the Bankruptcy Code*, 17 U.Rich.L.Rev. 667 (1983). *See also Energy Coop., Inc. v. SOCAP Int'l Ltd. (In re Energy Coop., Inc.)*, 832 F.2d 997 (7th Cir. 1987); *Air One, Inc. v. Flight Support Int'l, Inc. (In re Air One, Inc.)*, 80 B.R. 145 (Bankr.E.D.Mo.1987). Untimely payments are more likely to be considered outside the ordinary course of business. *Craig Oil Co.*, 785 F.2d at 1567; *Websco, Inc.*, 92 B.R. at 3. To the extent an otherwise normal payment results from unusual debt collection practices, the payment is not in the ordinary course of business for purposes of section 547(c)(2). *See Craig Oil Co.*, 785 F.2d at 1567. *But see Armstrong v. John Deere Co. (In re Gilbertson)*, 90 B.R. 1006 (Bankr.D.N.D.1988).

The facts in this case support a finding that the two payments in question were not in the ordinary course of business from either an objective standard or subjective standard. Here, the July 31, 1986, payment of $8,963.43, when applied to the oldest invoice first, paid for purchases which were made between March 26, 1986, and June 26, 1986. The August 13, 1986, payment of $3,472.17 paid for purchases which were made between June 26, 1986, and July 27, 1986. Considering the tenth of the month as the due date, both of the payments were applied to past due invoices. All but $593.56 of the purchases paid for by the July 31, 1986, payment were more than forty days old, with the oldest being 127 days old.

Furthermore, the notations on Heigel's ledger sheet indicated that the debtor was contacted on July 24, 1986, and July 29, 1986, and full payment was demanded with a threat to suspend future credit if the balance was not paid by August 11, 1986. The total amount of Mid–South's payments represented the amount for which Heigel had demanded payment, and the payments were made shortly after the demand. Mid–South's payments were obviously made in response to the threat to terminate credit privileges. Therefore, based on the evidence presented, the $8,963.43 payment made on July 31, 1986, and the $3,472.17 payment made on August 13, 1986, were

not made in the ordinary course of business and constitute preferential transfers.

 The evidence presented established the affirmative defense of a right of setoff under 11 U.S.C. § 547(c)(4). This section provides as follows:

(c) The trustee may not avoid under this section a transfer—

. . . .

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise un-avoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise un-avoidable transfer to or for the benefit of such creditor[.]

Section 547(c)(4) is a variation of the "net result rule" of section 60(c) of the old Bankruptcy Act, and permits a creditor to offset, against a preferential transfer, the amount of any subsequent unsecured credit extended to the debtor. 4 *Collier on Bankruptcy* ¶ 547.12 (15th ed. 1990). Applying this defense to the preference payments totaling $12,435.60, Heigel is entitled to offset subsequent unsecured credit totaling $3,724.00. *See Crichton v. Wheeling Nat'l Bank (In re Meredith Manor, Inc.),* 902 F.2d 257, 258–59 (4th Cir.1990); *Eisenberg v. O. Censor & Co. (In re Baumgold Bros., Inc.),* 103 B.R. 436, 439 (Bankr.S.D. N.Y.1989).

Therefore, the trustee is entitled to judgment against Heigel for $8,711.60.

IT IS SO ORDERED.